STROUD, Judge.
 

 Plaintiff Aurora Zetino-Cruz appeals from the trial court's order changing venue from Durham County to Lee County, North Carolina. Plaintiff argues that the court committed reversible error when it changed venue to Lee County
 
 sua sponte
 
 . We conclude that the trial court had no legal basis upon which to change venue since no defendant had answered or objected to venue. Nor did the trial court have any inherent power to change venue for the "convenience of the court." We therefore vacate the trial court's order and remand to Durham County for further proceedings.
 

 Facts
 

 On 1 May 2015, plaintiff filed a complaint in Durham County, seeking custody of her grandchildren, Javier, born in 2006, and Maria, born in 2009.
 
 [1]
 
 According to the verified complaint, defendants are the children's mother and father. Both of the children and defendants are citizens of El Salvador. Plaintiff, the children's maternal grandmother, had lived in North Carolina for about 15 years prior to filing this action, and the two children had resided with her in Sanford, North Carolina, since May 2014, or for about 12 months before the filing of the action. Plaintiff's complaint set forth extensive details regarding how the children ended up in
 her care. They have never lived with defendant-father, whom plaintiff alleged was involved in "Mara 18, one of the principal criminal gangs in El Salvador that controls many communities and subjects local residents to violence and terror." Defendant-father has also never provided financially for the children or assisted in their care. She further alleged that defendant-mother had fled El Salvador "[f]earing for her life and for the well-being of the Minor Children," due to defendant-father's criminal activities and the "extreme violence committed by organized criminal gangs that have taken control of" much of El Salvador as the "de facto government."
 

 In May 2014, defendant-mother and the children were "apprehended by U.S. Immigration officers" in Texas and later released on their own recognizance; they then moved to North Carolina to live with plaintiff. Defendant-mother failed to appear at her scheduled immigration hearing on 24 November 2014 and absconded. Plaintiff alleged that defendant-mother has made only one phone call to her since she absconded and has failed to provide any support for the children. When defendant-mother absconded, she left the children with plaintiff but failed to sign any documents which would give plaintiff legal authority to "fulfill the regular legal, medical, and educational decisionmaking that may only be done by a legal custodian." In addition, plaintiff alleged that Javier has "very extensive special needs" which require special services in school, including occupational therapy and speech therapy. Without any legal authority to authorize care or make decisions regarding Javier's services, plaintiff has had extreme difficulty maintaining the care that Javier needs.
 

 Plaintiff's complaint requested full physical and legal custody of the children and also requested additional factual findings by the trial court regarding "Special Immigrant Juvenile Status" of the children pursuant to
 
 8 U.S.C. § 1101
 
 (a)(27)(J) and 8 CFR 204.11. Plaintiff alleged that these findings would assist her in preventing removal of the children
 by immigration authorities and possible deportation, since return of the children to El Salvador would subject them to abuse and neglect from defendant-father, disruption of their education, and risk from the "extraordinarily high levels of crime and violence" in El Salvador. The complaint had many attached exhibits including birth certificates of the children and affidavits regarding the situation in El Salvador and risks to the children should they have to return there.
 

 Plaintiff filed a motion for emergency temporary custody along with the verified complaint and a notice of hearing for 14 May 2015 for an emergency temporary custody hearing. On 14 May 2015, the Honorable James T. Hill, District Court Judge presiding, entered a temporary custody order granting plaintiff full legal and physical custody of the children. In this order, the court concluded that the children are "at risk of irreparable harm if an emergency custody order is not issued to allow their legal, educational, and medical needs to be met." The temporary custody order also provided that:
 

 The terms of this order will remain in effect until such time as a further hearing occurs, and is entered without prejudice to the rights of the parties to a full and fair hearing on the merits of this matter. Should no further hearing occur in a reasonable time frame, this order will become the permanent order of this court, subject to modification only by a showing of a substantial change in circumstances.
 

 The temporary custody order also set the case for a pre-trial hearing and "any necessary review of this temporary order" on 14 August 2015 at 9:30 am and set a permanent custody hearing on 10 September 2015 at 9:30 am in Courtroom 6B of the Durham County Courthouse. The complaint was served on both defendants by publication, in both Spanish and English in Durham and in Spanish in El Salvador; the affidavit of service was filed on 24 July 2015. The publication also included the dates set by the temporary order for the pretrial hearing and trial. The first publication date was 10 June 2015, so defendants' answers were due by 20 July 2015. Neither defendant filed any answer or other response.
 

 On Friday, 14 August 2015, the matter came on for pretrial hearing as scheduled by the temporary order, but before a different
 judge. Plaintiff, her counsel, and the minor children were present.
 
 [2]
 
 The case was called for hearing, and the following colloquy ensued:
 

 MR. HENSLEY: Good morning, Your Honor. That's on for pretrial this morning.
 

 THE COURT: Does everybody live in Durham?
 

 MR. HENSLEY: Your Honor, nobody lives in Durham.
 

 THE COURT: All right. It will be the Court's own motion will be transferring.
 

 MR. HENSLEY: Your Honor, if I may be heard briefly. I prepared-
 

 THE COURT: I'll hear you briefly. Just be brief. Tell me what county you want this transferred to.
 

 MR. HENSLEY: We will not be transferring this, Your Honor.
 

 The trial court then called another case.
 

 After the trial court returned to plaintiff's case, the following discussion continued between the court and plaintiff's counsel:
 

 THE COURT: All right. Now you want to address something with me, Aurora Cruz?
 

 MR. HENSLEY: Yes, Your Honor.
 

 THE COURT: I'm listening.
 

 MR. HENSLEY: If I could switch out my piles here. Your Honor, it came to my attention yesterday afternoon that the question of venue had recently come to your attention. I previously prepared a memorandum for Judge Battaglia on this subject which was in my understanding satisfactory to him. So I prepared a memorandum for you this morning. If I may approach.
 

 THE COURT: All right.
 

 MR. HENSLEY: I do have two copies.
 

 THE COURT: What county is this?
 

 MR. HENSLEY: The Plaintiff and the children happen to reside in Lee County but they may be found as contemplated by the statute and case law in the County of Durham.
 

 THE COURT: I already looked this up. The Court is changing venue to Lee County.
 

 MR. HENSLEY: Your Honor-Your Honor, if I could go back to the table and be heard briefly.
 

 THE COURT: I'm listening.
 

 MR. HENSLEY: So I would like to first object to lack of notice for this Court's motion.
 

 THE COURT: I have so noted.
 

 MR. HENSLEY: And, Your Honor, the matter of venue is a substantive procedural right for the plaintiff and for the defendant when timely objected to.
 

 In this case the defendant has not objected and it is convenient to the Plaintiffs to be heard in the County of Durham wherein the children may be found on the occasion of filing the complaint and case law specifies that that is sufficient.
 

 Moreover, I'm representing these individuals and it is most convenient for them to have an attorney practice in its own district in order to have most efficient representation possible.
 

 And beyond that, Your Honor, the case law specifically gives the right to object to venue only to the defendant, the parties may agree otherwise, but the only statutory basis for changing venue is by objection of a defendant and ask that you carefully read the memorandum before issuing any order in this matter, Your Honor.
 

 THE COURT: I carefully read the law and I transfer-
 

 MR. HENSLEY: And the only other-
 

 THE COURT: -the venue to Lee County and you may have the same option as the people that you talked to yesterday. Thank you very much.
 

 MR. HENSLEY: Your Honor, could you please state for the record what that option would be. I would like to have a full and complete record of these proceedings and what you mean by these things because I was not given any notice. I was not given a written motion. I just heard
 from a
 friend yesterday afternoon that there was a question of venue.
 

 THE COURT: This transfers to Lee County.
 

 MR. HENSLEY: And what are the alternatives that you spoke of just a moment ago, Your Honor?
 

 THE COURT: I happen to move my calendar, Mr. Hensley, which consist [sic] of you.
 

 The trial court never identified what the "same option as the people that you talked to yesterday" was. The trial court then called another case. After completion of all of the remaining cases plaintiff's counsel had with the court, the trial court returned to plaintiff's case, and counsel asked the trial court the following in relation to this case:
 

 MR. HENSLEY: ... Is there a written ruling with regards to the out-of-county matter?
 

 THE COURT: Yes, sir, there is.
 

 MR. HENSLEY: All right. Is there a copy available for me at this time?
 

 THE COURT: Ask the clerk.
 

 MR. HENSLEY: Thank you, Your Honor.
 

 Both plaintiff's memorandum regarding child custody venue, which was handed up to the trial court during the hearing, and the trial court's order changing venue were filed at 9:40 am on the same day as the hearing, Friday, 14 August 2015 with the Durham County Clerk of Superior Court. Plaintiff filed notice of appeal from the order in Durham County on 28 August 2015 and an alternative notice of appeal from the order in Lee County on 31 August 2015, since the case had been transferred to Lee County. Defendants were served with the notices of appeal by filing with the clerk of court, in accord with Rule 26(c) of the Rules of Appellate Procedure. Neither has appeared in this appeal.
 

 Discussion
 

 A. Interlocutory appeal
 

 Because the order on appeal does not finally resolve the case, it is interlocutory.
 
 See
 

 Pay Tel Commc'ns, Inc. v. Caldwell Cnty.
 
 ,
 
 203 N.C.App. 692
 
 , 694,
 
 692 S.E.2d 885
 
 , 887 (2010) ("[T]he trial court's order
 granting defendants' motion to change venue is an interlocutory order, and thus, not generally subject to appellate review."). Plaintiff argues that the order changing venue affects her substantial rights and thus she has a right to immediate appeal. Plaintiff notes that the trial court relied upon
 
 N.C. Gen. Stat. § 50-13.5
 
 (f) (2015) as authority for the change of venue. This statute provides in pertinent part:
 

 (f) Venue.-An action or proceeding in the courts of this State for custody and support of a minor child
 
 may
 
 be maintained in the county where the child resides or
 
 is physically present
 
 or in a county where a parent resides, except as hereinafter provided.
 
 [3]
 

 N.C. Gen. Stat. § 50-13.5
 
 (f) (emphasis added).
 

 Thus, plaintiff argues that she had a statutory right to file the lawsuit in Durham County, since she claims that the children were "physically present" in Durham County, even if she and the children reside in Lee County. In addition, she argues that even if Durham County was an improper venue based upon residence of the parties, venue is not jurisdictional and may be waived. Our case law agrees.
 
 See, e.g.
 
 ,
 
 Bass v. Bass
 
 ,
 
 43 N.C.App. 212
 
 , 215,
 
 258 S.E.2d 391
 
 , 393 (1979) ("Venue may be waived by any party. Plaintiff voluntarily appeared and participated in the 27 June 1977 hearing on child support. He did not object to the venue or move for change of venue." (Citation omitted)).
 

 Our Supreme Court has noted that
 

 Although the initial question of venue is a procedural one, there can be no doubt that a right to venue established by statute is a substantial right. Its grant or denial is immediately appealable.
 

 Gardner v. Gardner
 
 ,
 
 300 N.C. 715
 
 , 719,
 
 268 S.E.2d 468
 
 , 471 (1980) (internal citations omitted). Unfortunately, we have only the appellant's brief in this case, since neither defendant has appeared. Furthermore, since the trial court's action was
 
 sua sponte
 
 , we
 also have no argument or legal authority, other than that cited in the order itself, addressing the rationale behind the trial court's ruling. Based upon the cases discussed in detail below, however, plaintiff had a statutory right for the action to remain in Durham County, unless and until a defendant should
 file a motion for change of venue to a proper county.
 
 See, e.g.
 
 ,
 
 Miller v. Miller
 
 ,
 
 38 N.C.App. 95
 
 , 97,
 
 247 S.E.2d 278
 
 , 279 (1978) ("[S]ince venue is not jurisdictional it may be waived by express or implied consent[.]"). Accordingly, plaintiff's interlocutory appeal is properly before this court.
 

 1. Standard of Review
 

 Plaintiff argues that our review should be
 
 de novo
 
 since the trial court's order was expressly based upon
 
 N.C. Gen. Stat. § 50-13.5
 
 (f). Plaintiff is correct that the order cites
 
 N.C. Gen. Stat. § 50-13.5
 
 (f) as the venue statute for custody matters, but based upon the conclusions of law, we believe that the trial court ultimately relied instead upon
 
 N.C. Gen. Stat. § 1-83
 
 (2015) as to the change of venue.
 
 [4]
 
 We have been unable to find any case addressing the standard of review for a trial court's
 
 sua sponte
 
 change of venue in this type of factual situation, so we will look to the usual standards of review for questions regarding venue.
 

 Our review of an issue of venue involves two steps, and each step has a different standard of review. The first step is determining the proper venue for a case, which is based upon the substantive statute for the particular type of claim. This determination of proper venue under the substantive statute presents a question of law which is reviewed
 
 de novo
 
 . The second step is determining whether a change of venue is appropriate under the procedural statute regarding changes of venue, which in this instance appears to be
 
 N.C. Gen. Stat. § 1-83
 
 . If a case has been filed in an improper venue under the substantive statute and a defendant has filed a timely objection to venue "before the time of answering expires,"
 
 N.C. Gen. Stat. § 1-83
 
 , then the trial court must change the venue and has no discretion to deny removal.
 

 " 'The general rule in North Carolina, as elsewhere, is that where a demand for removal for improper venue is timely and proper, the trial court has no discretion as to removal. The provision in N.C.G.S. § 1-83 that the court
 
 may
 
 change the place of trial when the county designated is not the proper one has been interpreted to mean
 
 must
 
 change.' "
 
 Kiker v. Winfield
 
 ,
 
 234 N.C.App. 363
 
 , 364,
 
 759 S.E.2d 372
 
 , 373 (2014) (emphasis added) (quotation marks omitted) (quoting
 
 Miller
 
 ,
 
 38 N.C.App. at 97
 
 ,
 
 247 S.E.2d at
 
 279 ),
 
 aff'd per curiam
 
 ,
 
 368 N.C. 33
 
 ,
 
 769 S.E.2d 837
 
 (2015). If, however, the case has been filed in a substantively proper venue and a defendant moves to change venue after filing an answer, the trial court
 may in its discretion change venue, so we review that ruling for abuse of discretion.
 
 See
 

 N. Carolina Farm Bureau Mut. Ins. Co. v. Paschal
 
 ,
 
 231 N.C.App. 558
 
 , 562,
 
 752 S.E.2d 775
 
 , 778,
 
 disc. review improvidently allowed per curiam
 
 ,
 
 367 N.C. 642
 
 ,
 
 766 S.E.2d 282
 
 (2014). There is no "bright line" test for abuse of discretion as to venue, and our review is based upon all of the facts and circumstances.
 

 The trial court is given broad discretion when ruling on a motion to change venue for the convenience of witnesses: The trial court may change the place of trial when the convenience of witnesses and the ends of justice would be promoted by the change. However, the court's refusal to do so will not be disturbed absent a showing that the court abused its discretion. The trial court does not manifestly abuse its discretion in refusing to change the venue for trial of an action pursuant to subdivision (2) of
 
 N.C. Gen. Stat. § 1-83
 
 unless it appears from the matters and things in evidence before the trial court that the ends of justice will not merely be promoted by, but in addition demand, the change of venue, or that failure to grant the change of venue will deny the movant a fair trial. In resolving this issue here, we do not set
 forth a "bright line" rule or test for determination of whether a trial court has abused its discretion in denying a motion to change venue. Rather, the determination of whether a trial court has abused its discretion is a case-by-case determination based on the totality of facts and circumstances in each case.
 

 Id.
 

 (citations, quotation marks, brackets, and ellipses omitted).
 

 The common element in review of changes of venue, whether from an improper venue or proper venue, is that the right to any change of venue is triggered by a timely motion filed by a defendant. The question then normally becomes whether the defendant has waived proper venue, and we review the determination of waiver
 
 de novo
 
 .
 

 [A]lthough we apply abuse of discretion review to general venue decisions, we apply
 
 de novo
 
 review to waiver arguments. Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.
 

 LendingTree, LLC v. Anderson
 
 ,
 
 228 N.C.App. 403
 
 , 407-08,
 
 747 S.E.2d 292
 
 , 296 (2013) (citations, quotation marks, and brackets omitted).
 

 2. Analysis
 

 The order on appeal is brief, so we will quote its findings of fact, conclusions of law, and decretal in their entirety:
 

 FINDINGS OF FACT
 

 1. That neither party is a resident or citizen of Durham County, North Carolina.
 

 2. That N.C.G.S. § 50-13.5(f) states that "An action or proceeding in the courts of this State for custody and support of a minor child may be maintained in the county where the child resides or is physically present or in a county where a parent resides."
 

 3. Although a court may hear actions in counties in which neither party resides, a change of venue is within the discretion of the presiding judge.
 

 4. That in the above listed case, Durham County is an inconvenient forum for the courts and neither party, nor the minor child resides in Durham County, North Carolina.
 

 CONCLUSIONS OF LAW
 

 1. That ... because of the convenience of witnesses, the convenience of the court, significant ties of minor child and Plaintiff to the County in which they reside, and the interests of justice Durham County is not the appropriate forum.
 

 THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:
 

 1. That venue shall be changed to
 
 Lee County
 
 , North Carolina and all files shall be transferred for continuing issues regarding child custody and Petitions for Special Immigration Status.
 

 The order appears to be on a form, as it is typed, except for the handwritten additions of information specific to this case: the parties' names, the file number, the date of hearing, and the county to which the case is being removed.
 
 [5]
 

 Although the order has a section entitled "Findings of Fact," it only contains one true factual finding: "That neither party is a resident or citizen of Durham County, North Carolina." The rest of the "findings" are either legal conclusions or general statements of law. Moreover, plaintiff does not challenge the trial court's findings of fact on appeal, and plaintiff has never disputed that she lives in Lee County. In any event, the trial court did not hear any evidence upon which it could make findings of fact. Plaintiff does challenge the trial court's legal conclusions on appeal, both those contained within the "Findings of Fact" and the one conclusion of law titled as such.
 

 First, the trial court skipped the first requisite inquiry into whether venue was proper under
 
 N.C. Gen. Stat. § 50-13.5
 
 (f) in the county where plaintiff filed the action. The
 order contains no findings of fact upon which a determination of proper or improper venue could be made. Yet to the extent that the trial court's conclusion of law is based upon
 
 N.C. Gen. Stat. § 50-13.5
 
 (f), it does seem to overlook one distinction: the statute does not address where the
 
 parties
 
 reside. Venue is based upon residence of the
 
 parents
 
 or a child or where a child is "physically present." Plaintiff is the children's grandmother, not their parent.
 
 N.C. Gen. Stat. § 50-13.5
 
 (f) places proper venue in custody actions in "the county where the child resides or is physically present or in a county where a parent resides[.]"
 

 As is apparent from the complaint, the service by publication, and the lack of response from either defendant, no one knows where the parents reside. The complaint does show that the children reside with plaintiff, but the record also indicates that the children were "physically present" in Durham County for the hearing, as noted in plaintiff's memorandum regarding child custody venue. In any event, the order made no factual findings about the children's residence or physical presence. Nevertheless, it would appear that even under
 
 N.C. Gen. Stat. § 50-13.5
 
 (f), either Lee County, where the complaint alleges that the children reside, or Durham County, where they were "physically present," could have proper venue. And basing venue on the physical presence of the children would seem entirely appropriate, particularly where a grandparent is seeking to protect grandchildren whose parents have disappeared. In fact, the order does not really conclude that venue in Durham County is "improper" under
 
 N.C. Gen. Stat. § 50-13.5
 
 (f) but only that it is "inappropriate" based upon various factors.
 

 Yet even if we assume that Durham County was not a proper venue under
 
 N.C. Gen. Stat. § 50-13.5
 
 (f), the trial court may not change venue, even if the action was filed in an improper venue, "unless the defendant,
 before the time of answering expires, demands in writing that the trial be conducted in the proper county[.]"
 
 N.C. Gen. Stat. § 1-83
 
 . In this case, "time of answering" expired in July 2015, and the defendants filed no answer. The trial court made one legal conclusion:
 

 1. That ... because of the convenience of witnesses, the convenience of the court, significant ties of minor child and Plaintiff to the County in which they reside, and the interests of justice Durham County is not the appropriate forum.
 

 Although the order does not cite to
 
 N.C. Gen. Stat. § 1-83
 
 , the language of the conclusion of law seems to be based upon it, at least to the extent that the order concludes that venue should be changed based upon "the convenience of witnesses" and "interests of justice." There is no legal conclusion regarding proper or improper venue.
 

 If Durham County was a proper venue for this case, the trial court may have discretion to move the matter, as laid out in
 
 N.C. Gen. Stat. § 1-83
 
 .
 
 N.C. Gen. Stat. § 1-83
 
 (2) provides that venue may be changed "When the convenience of witnesses and the ends of justice would be promoted by the change." Under
 
 N.C. Gen. Stat. § 1-83
 
 , however, a defendant must first file an answer and also move for change of venue before the trial court has discretion to order removal. This Court has previously addressed a situation in which a trial court changed venue under
 
 N.C. Gen. Stat. § 1-83
 
 (2) where a defendant had not yet answered, and based upon Supreme Court precedent, held that the trial court abused its discretion in changing venue prior to the defendant's answer.
 

 Pursuant to
 
 N.C. Gen. Stat. § 1-83
 
 (2), the court may change the place of trial when the convenience of witnesses and the ends of justice would be promoted by the change. Whether to transfer venue for this reason, however, is a matter firmly within the discretion of the trial court and will not be overturned unless the court manifestly abused that discretion. Moreover, motions for change of venue based on the convenience of witnesses, pursuant to section 1-83(2), must be filed after the answer is filed. Defendant's motion, based upon the "convenience of the witnesses and the ends of justice," was filed prior to an answer and it was therefore prematurely filed. As the trial court abused its discretion to the
 extent that it prematurely made a discretionary ruling to remove the case to Haywood County, we believe that this Court must reverse and remand to the trial court for further proceedings.
 

 ITS Leasing, Inc. v. RAM DOG Enterprises, LLC
 
 ,
 
 206 N.C.App. 572
 
 , 576,
 
 696 S.E.2d 880
 
 , 883 (2010) (citations, quotation marks, brackets, ellipses, and emphasis omitted).
 

 Since the trial court's authority to change venue is triggered by a defendant's objection to venue whether the filing venue was proper or improper, we cannot find any authority for a
 
 sua sponte
 
 change of venue in this situation. Whether we review this order for abuse of discretion or
 
 de novo
 
 , we must reverse the order changing venue. Neither defendant has filed an answer or objected to venue. Even assuming that Durham County was an improper venue under
 
 N.C. Gen. Stat. § 50-13.5
 
 (f), unless a defendant has filed an objection in writing to venue, the issue has been waived. Here, since defendants never appeared or filed an answer, they made no objection to venue and thus it is clear that they waived it.
 

 We have searched to find any inherent power for a trial court to change venue
 
 sua sponte
 
 but have not found any legal authority which can support the trial court's order. "Courts have the inherent power to do only those things which are reasonably necessary for the administration of justice
 
 within the scope of their jurisdiction
 
 . Inherent powers are limited to those powers which are essential to the existence of the court and necessary to the orderly and efficient exercise of its jurisdiction."
 
 Matter of Transp. of Juveniles
 
 ,
 
 102 N.C.App. 806
 
 , 808,
 
 403 S.E.2d 557
 
 , 559 (1991) (citations omitted). We cannot discern any reason that a change of venue in this case would be "necessary to the orderly and efficient exercise of [the trial court's] jurisdiction."
 

 Id.
 

 We have been able to find only two cases addressing a trial court's power to change venue
 
 ex mero motu
 
 , at least in dicta, under a related statute,
 
 N.C. Gen. Stat. § 1-84
 
 , in cases in which a party is unable to have a "fair and impartial trial" in the county where the action was filed. Both cases noted that the trial court does have discretionary as well as statutory authority to change venue.
 
 See
 

 Everett v. Town of Robersonville
 
 ,
 
 8 N.C.App. 219
 
 , 224,
 
 174 S.E.2d 116
 
 , 119 (1970) ("In addition, however, to the express statutory authority granted in G.S. 1-84, the judge of superior court has the inherent discretionary power to order a change of venue
 
 ex mero motu
 
 when, because of existing circumstances, a fair and impartial trial cannot be had in the county in which the action is pending.");
 
 English v. Brigman
 
 ,
 
 227 N.C. 260
 
 , 260,
 
 41 S.E.2d 732
 
 , 732 (1947) (holding superior court judge "had the inherent power
 
 ex mero motu
 
 to order a change of venue" after concluding a fair and impartial trial could not be held in original county). But the trial court did not conclude that plaintiff (or defendants) could not have a "fair and impartial"
 

 trial in Durham County, and nothing in our record suggests any reason to believe this.
 

 Since the legal basis for the order is unclear, we will also address the other factors the trial court cited as supporting a change of venue under
 
 N.C. Gen. Stat. § 1-83
 
 , "convenience of the court," "convenience of witnesses," and "the interests of justice." We cannot discern how plaintiff and the children, who were present and ready to proceed, could possibly find removal to Lee County "convenient." In fact, plaintiff's counsel expressed that removal to Lee County would not be convenient for plaintiff. The record does not indicate any other potential witnesses who may be in Lee County. But the phrase "convenience of witnesses" is at least a recognized factor under
 
 N.C. Gen. Stat. § 1-83
 
 and may apply based upon the facts of a particular case and where proper objection or motion is made. Yet we cannot find any authority for a transfer of venue based upon "convenience of the court." We cannot even determine what this phrase means and we decline plaintiff's invitation to speculate.
 

 Nor can we determine how the "interests of justice" are furthered by the change of venue. The most obvious "interest of justice" in this case is the welfare of the minor children. Plaintiff is a grandmother seeking custody of her grandchildren who were, as alleged
 by her complaint, abused, neglected, and abandoned by their parents. She requested legal authority to address their medical and educational needs, and in fact had already been granted temporary custody based upon the "risk of irreparable harm if an emergency custody order is not issued to allow their legal, educational, and medical needs to be met." Our legislature and courts have many times recognized the importance of the court's role in protecting children:
 

 The legislature has spoken to the issue of child custody in three separate chapters, Chapter 50 (addressing primarily divorce and separation proceedings), Chapter 7A of the Juvenile Code, (focusing on juvenile delinquency, neglect and abuse), and Chapter 50A, (the Uniform Child Custody Jurisdiction Act). A constant theme sounded throughout each of these chapters is the overriding importance of protecting the welfare of children.
 

 Sharp v. Sharp
 
 ,
 
 124 N.C.App. 357
 
 , 362,
 
 477 S.E.2d 258
 
 , 261 (1996) (citations omitted).
 

 The order changing venue has served only to delay a final resolution of custody of the children, and our Supreme Court has often recognized the need to avoid delay in cases involving children:
 

 The importance of timely resolution of cases involving the welfare of children cannot be overstated. A child's perception of time differs from that of an adult. As one commentator observed, "The legal system views [child welfare] cases as numbers on a docket. However, to a child, waiting for a resolution seems like forever-an eternity with no real family and no sense of belonging."
 

 This Court has recognized that justice delayed in custody cases is too often justice denied. Notably, our Rules of Appellate Procedure provide for expedited appeals in cases involving termination of parental rights and issues of juvenile abuse, neglect, and dependency. Thus, in almost all cases, delay is directly contrary to the best interests of children, which is the "polar star" of the North Carolina Juvenile Code.
 

 In re T.H.T.
 
 ,
 
 362 N.C. 446
 
 , 450,
 
 665 S.E.2d 54
 
 , 57 (2008) (citations omitted.)
 

 Javier and Maria are not "numbers on a docket;" they are children who need protection. The trial court's concern "to move my calendar" was misplaced in this instance, and it had no legal authority to change venue
 
 sua sponte
 
 under
 
 N.C. Gen. Stat. § 1-83
 
 where no defendant had answered or objected to venue. The only party actively participating in the proceedings was present and ready to proceed in Durham County. All in all, we can find no inherent authority for the trial court to change venue
 
 sua sponte.
 
 The plaintiff has the right to select a forum initially for filing, and although circumstances may later change in such a way that venue could be changed for various reasons, there was no such change here. Accordingly, we reverse the trial court's order changing venue to Lee County and remand for further proceedings in Durham County consistent with this opinion.
 

 Conclusion
 

 The trial court had no authority to enter an order
 
 sua sponte
 
 changing venue where no defendant had answered or objected to venue. We vacate the order and remand this matter to the trial court for further proceedings in Durham County consistent with this opinion.
 

 VACATED AND REMANDED.
 

 Chief Judge McGEE and Judge ZACHARY concur.
 

 We have used pseudonyms to protect the privacy of the children.
 

 Plaintiff filed a memorandum regarding child custody venue on 14 August 2015, the day of the hearing, that noted that the minor children "are physically present in Durham County and attending today's pretrial hearing[.]"
 

 The remainder of the subsection addresses cases in which there are also claims for annulment, divorce, or alimony, none of which are applicable here.
 

 The order does not refer to
 
 N.C. Gen. Stat. § 1-83
 
 specifically, but most of the language in the conclusion of law is based upon this statute, and we cannot determine any other potential statutory basis for change of venue.
 

 The county to which the case is to be removed is the only blank in the body of the order, underlined above.